Gkeen, J.
delivered the opinion of the court.
Worsham having recovered judgment before a justice of the peace against R. D. Parrish, the plaintiff in error became security for the stay óf execution. After the expiration of the time allowed for the stay, an execution issued against Parrish and Harwell, and came to the hands of Bridges, the constable, who had in his hands other executions against Parrish. At the same time. Parrish was indebted to the constable, Bridges, in the sum of about four hundred dollars, which Bridges had loaned him, and for which he held his notes, upon which he was to pay twenty-five per cent interest. Things being in this situation, Parrish delivered to the constable, Bridges, a negro boy, slave, to be sold, without giving any instruction as to the application óf the proceeds of the sale.
The slave was sold for seven hundred dollars, a sum more than sufficient to have satisfied all the executions against Parrish in the hands of Bridges. The constable, Bridges,' paid Worsham, the plaintiff below, the entire amount of his .execution, without reservation or condition, and without any contract of any sort with the plaintiff, but he did not credit the execution, or return it satisfied, but held it still in his hands. Parrish has become insolvent, and the execution aforesaid is sought to be enforced against Harwell, the security for the stay, on the ground, that Bridges applied part of the money arising from the sale of the slave, to the extinguishment of his own debt against Parrish, and that the remaining portion of the price of the slave was insufficient to satisfy the executions in his hands.
The court told the jury, that “a constable could advance money *527 to the plaintiff in an execution, and pay off the execution, and then enforce the collection of the execution in the name of the plaintiff therein, for his own use, benefit and indemnity,” but, “that such constable could not be his own officer, but that it was competent to place the execution in the hands of another constable to enforce it for his benefit.”
The court further charged the jury, “that if the constable, Bridges,'had executions in his hands against Robinson D. Parrish, and also private notes of his own on him, and received the negro boy Jacob from Parrish for sale, without any directions from him as to the application of the money he should get from such sale, then it would be competent for him to apply the money to the payment of his own private and individual claims or notes, to the exclusion of such executions.”
1. Can a constable or sheriff, after he has paid off an execution to the plaintiff, hold it up as unsatisfied, and enforce the collection of the money upon that execution for his own benefit?
We think most dearly, he cannot. When the judgment creditor is paid and satisfied, the object, for which the execution was issued, has been attained, and the force of the writ is spent. The process being thus functus officio, the power which was conferred upon the officer by it, is gone. If upon a subject so plain, authority were wanting, the cases of Reed vs. Pruyn & Staats, 7 Johns. Rep. 426, and Sherman vs. Boyce, 15 Johns. Rep. 444, are full upon the point. In the latter case, the debtor and the deputy sheriff executed their joint note to one Barney, from whom the money was borrowed, and the. officer paid it to the plaintiff in the execution; the debtor agreeing that the execution should still be held in the hands of the deputy sheriff for his security, and that if Barney should call on him for the mone}1', the sheriff might sell under the execution.
When the sheriff paid the money to the plaintiff, he informed him that the execution was not intended to be discharged, and his receipt was taken for the money on a separate piece of paper. The court said, it was not a conditional agreement, nor advance of money by the deputy sheriff to the creditor; “the debt must, therefore, be deemed satisfied as to the judgment creditor; and that fact being established, the law, founded on wise policy, considers the execution as functus officio.”
So in the case before the court, the debt was satisfied. There was no *528 condition in the payment of the creditor; no contract with him for the purchase of the debt, and advance of money, on his assignment, verbal or written, of the beneficial interest in the judgment and execution against the debtor. Being thus satisfied, no matter by whom, the execution ceased to have any force, or give the officer any power to act.
In the case of Weller vs. Weedale, Noy, 107, it was decided, that if a shei’iff satisfy a debt out of his own money, he cannot afterwards detain the goods of the debtor, on the ji. fa., for his own indemnity. Nor can the question, whether the debtor requested the officer to satisfy the execution, or it was done of his own accord, without the knowledge of the debtor, make any difference.
The 2nd question is, whether the constable hada right to retain part of the price of the slave, in satisfaction of his own debt due by note, in exclusion of the executions he had in his hands?
We do not say, that an individual, against whom an officer may have an execution, may not pay a private debt due the officer, by stipulating at the time he gives the money, that it is to be received in discharge of such private debt.
But a sheriff or constable is required to use active diligence in the execution of process which may come to his hands. He must, if the defendant have property, levy the execution, or show some reasonable excuse why he did not. And if property be placed in his hands for sale, without directions about its application, he is bound to apply it to the execution, although he may have a private claim against the debtor.
So, if money be paid to an officer, who has executions against the party, and also a private debt, it must be applied to the executions in preference to the private debt; because the execution creditors have placed in the officer’s hands the means of coercing payment of their claims, and the presumption would be, that the money or property was intended by the debtor for the satisfaction of the claims that were thus pressing him; and because the officer is bound to use active diligence in the execution of process, a diligence exceeding that which a man employs in his own affairs. If a private man, without reward, were to undertake to collect a note for a friend, and he had a claim against the same debtor, and money were paid him without direction, he might apply it to his own or his friend’s debt. But even in that case, it would hardly be thought *529 fair, if his own debt were extinguished, and his friend’s entirely excluded. But how different is the case before the court. The constable, by reason of these executions, obtained property without directions as to its application, and having sold it, applied the proceeds to the payment of a debt for money borrowed ■ of him at twenty-five per cent interest, and the execution creditors are wholly excluded.
If this were tolerated by the court, it is easy to see that it would invite the constables to adopt a'system of fraud upon execution creditors, and oppression upon debtors, that would tend to subvert the foundations of private right, and of civil liberty.
Therefore, upon grounds of public policy, if no other principle were in the way, such a procedure could not be tolerated.
Upon both points here noticed, the court erred, and, therefore, the judgment is reversed.